# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**MARY HELEN SHORT**, as next friend
and legal guardian of Marsha Webb, an
incapacitated adult,

    Plaintiff,

v.                                                                          No. 2:13-cv-0213-JAP-CG

**DE BACA COUNTY BOARD OF COMMISIONERS,
DE BACA COUNTY DETENTION CENTER,
DE BACA COUNTY SHERIFF'S DEPARTMENT,**
and
**RONNIE HARRIS, in his official and individual capacity,**

    Defendants.

## MEMORANDUM OPINION AND ORDER

On July 31, 2014, Defendants filed a MOTION FOR SUMMARY JUDGMENT AND QUALIFIED IMMUNITY, Doc. No. 63 ("Motion for Summary Judgment"). On August 20, 2014, Plaintiff Marsha Webb[1] filed a RESPONSE TO MOTION FOR SUMMARY JUDGMENT, Doc. No. 70 ("Response"). On September 5, 2014, Defendants filed a REPLY TO RESPONSE TO MOTION FOR SUMMARY JUDGMENT, Doc. No. 77 ("Reply"). After considering the parties' briefs and relevant portions of the record, including affidavits, this Court will GRANT Defendants' Motion for Summary judgment and dismiss Plaintiff's complaint with prejudice.

---

[1] Although the caption of this case names Mary Helen Short as Plaintiff, the Court will refer to Marsha Webb as Plaintiff in order to avoid unnecessary confusion.

## JURISDICTION

This Court has subject matter jurisdiction over Plaintiff's 42 U.S.C. § 1983 claims under 28 U.S.C. §§ 1331 & 1441(a). *See* Doc. No. 1-2 at 4 ¶ 16. This Court has jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

## PROCEDURAL HISTORY

On January 24, 2013, Plaintiff filed a complaint against Defendants in New Mexico State District Court in De Baca County. Doc. No. 1-2. The complaint alleges Defendant Ron Harris "engaged in a series of systematic sexual advances towards [Marsha] Webb which eventually led to acts of sexual contact and sexual penetration[.]" *Id.* at 3. Plaintiff seeks damages from the Defendants for assault, battery, false imprisonment, and deprivation of Constitutional rights under 42 U.S.C. § 1983. *Id.* at 4.

On March 5, 2013, Defendants timely removed Plaintiff's case to this Court. Doc. No. 1. After the close of discovery, Defendants filed a Motion for Summary Judgment. Plaintiff filed a Response, but then the Magistrate Judge presiding over discovery extended the discovery deadline in order to allow the Defendants to depose Marsha Webb. The Court allowed Plaintiff to supplement the record with portions of her deposition that she believed created genuine issues of material fact. *See* Doc. No. 79.

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*,

912 F.2d 1238, 1241 (10th Cir. 1990). The party seeking summary judgment bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation marks omitted). Once the movant meets this burden, Rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). In considering a motion for summary judgment, then, the Court's "role is simply to determine whether the evidence proffered by plaintiff would be sufficient, if believed by the ultimate factfinder, to sustain her claim." *Foster v. Alliedsignal, Inc.*, 293 F.3d 1187, 1195 (10th Cir. 2002).[2]

When a defendant moves for summary judgment based on its qualified immunity, the plaintiff bears the burden of showing (1) the defendant violated a constitutional right; and (2) that the constitutional right was clearly established at the time of the violation. *Courtney v. Oklahoma ex rel. Dept of Pub. Safety*, 722 F.3d 1216, 1222 (10th Cir. 2013). Because the Court finds Defendants have demonstrated that there is no genuine issue as to material fact and that they are entitled to summary judgment on all of Plaintiff's claims, the Court will not determine whether Plaintiff has met her burden under the qualified immunity analysis.

## DISCUSSION

Plaintiff claims that Mr. Harris violated her right to freedom from cruel and unusual punishment under U.S. CONST. AMEND. VIII, and that Mr. Harris's liability should be imputed to the other Defendants because their policies or practices enabled Mr. Harris's conduct. Plaintiff was being held in pre-trial detention in the De Baca County Detention Center. The Eighth

---

[2] Plaintiff devotes nearly four pages of her nineteen-page Response to argue that the New Mexico Rules of Civil Procedure apply to Defendants' Motion for Summary Judgment. But the Federal Rules of Civil Procedure govern the Defendants' motion as to all of Plaintiff's claims, even those where state law furnishes the rule of decision. *Stickley v. State Farm Mut. Auto Ins. Co.*, 505 F.3d 1070, 1076 (10th Cir. 2007).

Amendment only applies "after [the State] has secured a formal adjudication of guilt in accordance with due process of law." *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983). Until then, the Fourteenth Amendment applies. The Fourteenth Amendment gives pretrial detainees rights "at least as great as the Eighth Amendment protections available to a convicted prisoner." *Id.* In the Tenth Circuit, claims for sexual abuse in violation of a prisoner's Eighth Amendment rights are considered "a species of excessive-force claim, requiring at least some form of coercion (not necessarily physical) by the prisoner's custodians." *Graham v. Sheriff of Logan County*, 741 F.3d 1118, 1126 (10th Cir. 2013).

   1. Mr. Harris's individual liability under § 1983 for sexual relations with Plaintiff

A prison official violates the Eighth Amendment when: (1) the injury alleged is objectively, "sufficiently serious"; and (2) the prison official acted with subjective "deliberate indifference" for the inmate's constitutional rights. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In the context of sexual abuse of a prisoner at the hands of a prison official, a plaintiff must show that the prison officer exerted at least some force or coercion on the plaintiff. *Graham*, 741 F.3d at 1126. Thus, Defendants are entitled to summary judgment if they can show that there is no genuine dispute that Plaintiff a) did not have any sexual contact with Mr. Harris; or b) if there was a sexual relationship with Mr. Harris, Plaintiff consented to it.

   a. Sexual contact

From May 13, 2010 to March 30, 2011, Plaintiff was held in the De Baca County Detention Center on pending state law charges. Doc. No. 63-5 at 2. At some point before October 23, 2010, Ron Harris, a guard at the Detention Center, had a "relationship" with Plaintiff. Doc. No. 70-1 at 1. Plaintiff sent a letter to Mr. Harris on October 11, 2010 professing her love for him. Motion for Summary Judgment at 7. Mr. Harris's employment was terminated

on October 23, 2010 after prison administrators discovered he had been having phone conversations with Ms. Webb. Doc. Nos. 70-1 at 1 & 63-2.

At a recent deposition, Plaintiff testified that Mr. Harris would come to her cell every morning before he started his shift. Doc. No. 81 at 9. Plaintiff said Mr. Harris would kiss her and touch her breasts, but she denied ever having sexual intercourse with Mr.Harris. *Id.* at 10. Plaintiff does not recall speaking to police about any of these incidents. *Id.* at 11.

Plaintiff alleges Officer Jimmy Butterfield interviewed her on March 1, 2011. According to notes taken by Plaintiff's counsel, who was present at the interview, Plaintiff told Officer Butterfield that Mr. Harris "digitally penetrated" her three times and engaged in other sex acts. *See* Doc. No. 44-4 at 1–2; Response at 4–5. Although Plaintiff says Officer Butterfield acknowledged the content of the interview at his own deposition, *see* Response at 6, neither Officer Butterfield's deposition nor a copy of the interview audio recording is part of the record. *See* FED. R. CIV. P. 56(c)(1)(A) ("A party asserting that a fact…is genuinely disputed must support the assertion by citing to particular parts of materials *in the record*[.]" (emphasis added)). Plaintiff's counsel's handwritten memoranda of Plaintiff's statements at the interview are inadmissible hearsay. Thus, the Court cannot give any weight to Plaintiff's unsupported statements about what Plaintiff told Officer Butterfield at the interview.

Officer Butterfield has now disclaimed any knowledge of the facts of this case and denies that his investigation uncovered "factual evidence to support the allegations of a sexual relationship[,]" Butterfield Affidavit, Doc. No. 63-1 at ¶ 5. However, Ms. Webb's deposition testimony creates a genuine issue of material fact on the question of whether Mr. Harris had an inappropriate sexual relationship with Plaintiff. Stated differently, the record, viewed in the light

most favorable to the Plaintiff, shows Plaintiff was involved in a sexual liaison with Mr. Harris that involved, at the very least, inappropriate kissing and touching.[3]

    b. Consent

In the Tenth Circuit, a prisoner's Eighth Amendment rights are not violated when the prisoner has consensual sex with a prison officer. *Graham*, 741 F.3d at 1126. However, *Graham* did not definitively assign the burden of proving consent to the prison officer or lack thereof to the prisoner. *Id.* ("Even were we to adopt the same presumption as the Ninth Circuit, the presumption against consent would be overcome by the overwhelming evidence of consent [in this case]."). Since consent is an issue in this case, the Court will adopt the Ninth Circuit's presumption of non-consent and assign Mr. Harris the burden of showing there is no genuine issue of material fact requiring a trial. *See Wood v. Beauclair*, 692 F.3d 1041, 1048 (9th Cir. 2012).[4]

Outward manifestations of consent, of course, may not be effective if there is evidence that the prisoner was incapable of consent and the prison officer knew of the prisoner's incapacity. *See id.* at 1222 ("[Plaintiff] had a history of bipolar disorder and sexual abuse. But there is no indication that either [Officers] Jefferies or Mendez was aware of or had reason to be aware of her mental-health issues."). Whether Mr. Harris is entitled to summary judgment on this claim depends on whether the record, viewed in the light most favorable to Plaintiff, evinces no

---

[3] Most of the case law surrounding sexual relationships between inmates and their captors concerns sexual intercourse, either forced or consensual. *See*, *e.g.*, *Minton v. Guyer*, 2014 WL 1806844, No. 12-6162 (E.D. Pa. 2014). Because this Court ultimately concludes there is no genuine dispute that Plaintiff consented to Mr. Harris's advances, it need not decide the whether a non-consensual sexual relationship that does not involve sexual intercourse is "sufficiently serious" to violate an inmate's constitutional rights. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

[4] Defendants have also moved for summary judgment based on qualified immunity. Under this rubric, Plaintiff has a burden of proving Defendant violated her clearly-established constitutional rights. Because Defendants have shown that there no genuine issue as to Plaintiff's consent, it follows Plaintiff has failed to satisfy her burden in opposing a motion for summary judgment based on qualified immunity. Therefore, the Court will not address this aspect of Defendants' argument.

genuine dispute that Ms. Webb 1) had the capacity to consent to sex with Mr. Harris and 2) actually consented to Mr. Harris's sexual advances.

      *i)*      *Capacity to consent*

Defendants say the fact that Plaintiff is currently in a sexual relationship while being housed in a treatment facility demonstrates she is capable of consenting to sex. *See* Doc. No. 63 at 18; Doc. No. 63-19 (Rose report).[5] Defendants have provided evidence that Plaintiff's three proposed experts (*see* Doc. No. 58-12) have not offered nor do they plan to offer any opinions about Ms. Webb's capacity to consent to sex. *See* Affidavit of Christopher J. Alexander, Ph. D., Doc. No. 63-16; Affidavit of Maxann Schwartz, Ph. D., Doc No. 63-16; Deposition of John H. Gatling, Ph. D., Doc. No. 63-18 at 4–5.

Plaintiff argues that because sexual penetration of "an inmate confined in a correctional facility or jail when the perpetrator is in a position of authority over the inmate" is illegal under New Mexico law, *see* N.M. Stat. Ann. 30-9-11(E)(2) (West 2014), consent or coercion has no bearing on whether Mr. Harris violated her constitutional rights. But Plaintiff identifies no evidence in the record that contradicts her admission in her deposition that no sexual penetration occurred. Doc. No. 81 at 10:18–24. Moreover, Plaintiff cites no authority for the proposition that violation of a state criminal statute gives rise to a per se violation of constitutional rights that would support relief under 42 U.S.C. § 1983. In any event, the Tenth Circuit ruled in *Graham* that such consensual relationships do not violate the Constitution as a matter of law.

Plaintiff next asserts, without citation to the record, that Ms. Webb is "retarded…and as such the combination of mental deficiency and confinement made her unable to consent to sexual activity…with a person who was in a position of authority over her at the jail." Response at 12.

---

[5] Plaintiff says she has "been involved with men in a boyfriend capacity" since her release, without any citation to the record. Response at 11.

But this conclusory assertion is unsupported by evidence in the record. There is some indication Ms. Webb is mentally deficient and perhaps unusually suggestible. *See* Evaluation Report by Doctor Anne Rose, Ph.D., Doc. No. 63-20. But Plaintiff has not offered any expert testimony or even argued that a mental deficiency of any degree renders Plaintiff incapable of consenting to sex. Accordingly, the Court will not consider it in determining whether there is a genuine dispute as to Plaintiff's capacity to consent.

In sum, the record contains some circumstantial evidence that Plaintiff is able to consent and no evidence at all that she is incapable of consenting. But Plaintiff does not argue for, nor can this Court find any precedential support for the proposition that she should be presumed incapable of consenting to sex. Thus, this Court finds that there is no genuine dispute as to Plaintiff's capacity to consent.

    *ii)*    *Consent*

Given there is no genuine issue as to Plaintiff's *ability* to consent, the next issue is whether there is any genuine issue as to whether Plaintiff *actually did* consent. Defendants point to a vaguely lascivious letter Plaintiff wrote to Mr. Harris (Doc. No. 63-7) and her deposition testimony, Doc. No. 81 at 11, as evidence that her relationship with Mr. Harris was consensual. This evidence does tend to establish that Plaintiff "loved" Mr. Harris and that she was open to a sexual relationship with him. *See* Doc. No. 81 at 8 ("I guess I just kind of fell in love with him right away.").

Plaintiff has submitted no evidence and points to no evidence indicating she did not consent to Mr. Harris's advances or that Mr. Harris coerced her into a sexual relationship. Instead, Plaintiff stakes her position on a New Mexico criminal statute prohibiting sexual penetration of inmates by prison officials and assertions that Plaintiff's mental incapacity

rendered her unable to consent. But by Plaintiff's own admission, there was no penetration and she consented to Mr. Harris's sexual advances. Therefore, there is no genuine issue as to material fact that Ms. Webb consented to Mr. Harris's alleged sexual advances.

In sum, the Court determines that, under the record of admissible evidence in this case, no genuine dispute exists as to Plaintiff's capacity to consent and her actual consent to a sexual relationship with Mr. Harris. Ms. Webb's deposition, the letter she sent to Mr. Harris, and the absence of any expert opinion that Ms. Webb is incapable of consent provide evidence sufficient to show Plaintiff appreciated "the nature, extent, and probable consequences" of Mr. Harris's sexual overtures and consented to them. RESTATEMENT (SECOND) OF TORTS § 892A cmt. b (1977). Because Plaintiff has failed to rebut the Defendants' initial showing that Plaintiff knowingly consented to a sexual relationship with Mr. Harris, and because the Tenth Circuit has ruled consensual sexual relationships with prison inmates are constitutional as a matter of law, there are no genuine issues of material fact on Plaintiff's Section 1983 claim.

Because this Court concludes the evidence in the record, viewed in the light most favorable to Plaintiff, could not support a jury's conclusion that Defendants violated Plaintiff's constitutional rights, this Court need not determine whether Defendants are entitled to qualified immunity. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (describing how a court need only determine if a constitutional right was clearly established at the time of the alleged violation if the Plaintiff's factual allegations or the facts in the record "make out a violation of a constitutional right." (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

2. Liability of De Baca County Board of Commissioners, De Baca County Detention Center, and De Baca County Sheriff's Department ("Institutional Defendants")

The only theory of liability under which Institutional Defendants may be liable to Plaintiff for Mr. Harris's alleged actions is found in *Monell v. New York City Dep't. of Soc.*

*Servs.*, 436 U.S. 658 (1978).[6] Under *Monell*, a municipality may be liable for its employees' constitutional violations if a plaintiff can show that the constitutional violations were caused by a municipal policy or custom. *Bd. of the County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 403 (1997) (discussing *Monell*).

Plaintiff's theory of municipal liability is based on rumors that a prison supervisor, Gregory Barbe, allowed Mr. Harris and various male inmates to have sex with Plaintiff and other female inmates. In a deposition, Plaintiff's counsel testified "Greg Barbie (sic) was allowing other inmates to go in and have sex with Marsha [Webb] in her cell and that one of the guards, Ronnie, was having sex with her as well." Deposition of Jennifer Burrill, Doc. No. 63-3 at 3. But Plaintiff's counsel's testimony is inadmissible hearsay, and thus cannot be used to create a genuine issue of material fact. *Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F. 3d 1193, 1199 (10th Cir. 2006).

Plaintiff asserts Lynita Lovorn, a De Baca County Detention Center administrator, testified "there was an investigation into Greg Barbie allowing male inmates into the female inmate cell to have sexual relations…[and] that Greg Barbie and Ronnie Harris did work together at the jail." Response at 8. Plaintiff further asserts "Ms. Lovorn testified she made recommendations for safeguards at the jail to the Commission following Mr. Barbie's termination in 2009. The Commission failed to act on these recommendations until after Ms. Webb was sexually penetrated…by detention officer Harris." Response at 16. But because Plaintiff did not attach any portion of Ms. Lovorn's deposition to her Response or cite any

---

[6] Institutional Defendants argue, and Plaintiff appears to concede, that the appropriate legal standard for evaluating whether Institutional Defendants in this case may be held liable for Mr. Harris's actions is found in *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760 (10th Cir. 2013). But *Schneider* describes the legal standard for holding a supervisor liable in his individual capacity for the acts of the supervisor's subordinates. *Id.* at 767. Because Mr. Harris is the only defendant named in Plaintiff's complaint in his individual capacity, *Schneider* does not apply.

portion of the record that contains Ms. Lovorn's testimony, the court will disregard the Plaintiff's assertions. *See* FED. R. CIV. P. 56(e)(2).

Even if Mr. Harris's conduct constituted a violation of Ms. Webb's constitutional rights, Plaintiff points to no (nor is there any) evidence in the record of a policy or practice, formal or informal, that enabled Mr. Harris's conduct. Plaintiff's aforementioned assertions of fact do not provide even a mere scintilla of evidence that could allow a jury to conclude that Mr. Harris's alleged conduct was caused by "decisions of [Defendants'] duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Brown*, 520 U.S. at 403–04. Therefore, Institutional Defendants are entitled to Summary Judgment on Plaintiff's § 1983 claim.

3. Plaintiff's State Law Claims

Defendants contend that they are entitled to summary judgment on Ms. Webb's claims for assault, battery, and false imprisonment because there is no genuine dispute that Ms. Webb consented to Mr. Harris's advances. Consent is a defense to liability for the tort of battery. *See* RESTATEMENT (SECOND) OF TORTS § 13 cmt. d (1965). Consent is also a defense to liability for the tort of assault. *Id.* § 21 cmt. e. And, consent is a defense to liability for the tort of false imprisonment. *See id.* § 35. Because there is no genuine dispute that Ms. Webb consented to Mr. Harris's sexual advances, Defendants' Motion for Summary Judgment will be granted as to Plaintiff's state law tort claims against all Defendants.

## CONCLUSION

On a motion for summary judgment under FED. R. CIV. P. 56, this Court must resolve any conflicting evidence in the non-moving party's favor. Unfortunately, Plaintiff has failed to create any sort of record of **admissible** evidence that gives rise to such a conflict. Instead, the

only factual propositions that could even arguably support a finding that there are genuine issues of material fact requiring a trial come in the form of multiple-hearsay deposition testimony and unsupported assertions of fact in Plaintiff's Response. *See Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F. 3d 1193, 1199 (10th Cir. 2006) (hearsay evidence such as affidavits may be submitted to create a genuine issue, but the content of that evidence must itself be admissible); *see also* FED. R. CIV. P. 56(c).

Plaintiff relies entirely on Mr. Harris's personnel record and Ms. Webb's deposition testimony in an attempt to create genuine issues of material fact. But this evidence, viewed in the light most favorable to Plaintiff, only establishes that Mr. Harris kissed and touched Ms. Webb while she was in prison, and that she consented to his advances and this conduct. Because consensual sexual encounters between prison officers and inmates are not actionable under 42 U.S.C. § 1983 as a matter of law, *see Graham*, *supra*, and Plaintiff has failed to create a genuine issue of material fact to rebut Defendants' evidence that Plaintiff was capable of consenting to Mr. Harris's sexual overtures, Defendants are entitled to summary judgment on Plaintiff's § 1983 claims. Likewise, because consent is a complete defense to Plaintiff's state law claims, summary judgment is appropriate on those claims as well.

IT IS ORDERED that:

1.   Defendants' Motion for Summary Judgment is GRANTED; and

2.   A separate Summary Judgment will be entered dismissing Plaintiff's claims with prejudice.

_____
SENIOR UNITED STATES DISTRICT JUDGE